## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **LINDA G. BATTON,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:11CV00052 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Gregory R. Herrell, Arrington Schelin & Herrell, P.C., Bristol, Virginia, for Plaintiff. Nora R. Koch, Acting Regional Chief Counsel, Region III, Timothy F. Kennedy, Assistant Regional Counsel, and Robert W. Kosman, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Linda G. Batton filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits pursuant to Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-433, 1381-1383d (West 2011).  Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

Batton filed for benefits on December 18, 2008, alleging that she became disabled on September 15, 2008. Her claim was denied initially and upon reconsideration. Batton received a hearing before an administrative law judge ("ALJ"), during which Batton, represented by counsel, and a vocational expert testified. The ALJ denied Batton's claim, and the Social Security Administration Appeals Council denied her Request for Reconsideration. Batton then filed her Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment, which have been briefed. The case is ripe for decision.

II

Batton was born on March 25, 1980, making her a younger person under the regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c) (2011). Batton has a high school education and has worked in the past as a nursing home cook. She originally claimed she was disabled due to anxiety, depression, high blood pressure, narcotism, and a history of cervical cancer.

Batton sought treatment at Abingdon Obstetrics and Gynecology from September 2007 through January 2009. During this time, Batton was diagnosed with a left ovarian cyst. In January 2008, a colposcopy report indicated that Batton

had a high grade lesion on the cervix.  Batton underwent a laparoscopic tubal ligation in February 2008, during which cancer cells were removed.

Batton sought treatment at Family Healthcare Associates from April 2008 through July 2010.  During this time period, Batton complained of neck pain, cervical pain, low back pain, and hypertension.  She was prescribed Skelaxin, Ultram, and Lisinopril.  In May 2008, a series of X rays were performed at Russell County Medical Center.  An X ray of the lumbar spine revealed a paravertebral muscle spasm and no acute fractures.  An X ray of the left knee was normal, and X rays of the cervical spine showed no acute abnormalities and only slight straightening of the spine sometimes associated with spasm.

During her treatment at Family Healthcare Associates, Dwight L. Bailey, M.D., diagnosed Batton with narcotism and started her on an extensive Suboxone therapy regime.  Additionally, Batton complained of mental symptoms such as anxiety, panic attacks, and depression.  She was prescribed Klonopin, Abilify, Lexapro, and Rozerem. Batton was repeatedly found to be alert and oriented times three and, on multiple occasions, Batton reported that her anxiety and depression were improving and controlled with medication.  (R. at 310, 318, 324, 405, 407.) In September 2008, Dwight L. Bailey, M.D., indicated that Batton had no depression, anxiety, paranoia, or hallucinations.  (R. at 310).

At the request of Dr. Bailey, Batton began psychotherapy treatment with Karilyn Shipman, L.C.S.W., in October 2008. Batton complained of crying spells, panic attacks, and irritability. Shipman diagnosed Batton with depressive disorder and panic disorder.

In November 2008, Batton expressed feelings of anger toward her parents. Shipman prescribed Lexipro and encouraged Batton to continue her Suboxone regime. In December 2008, Shipman reported that Batton was depressed and tearful, but oriented with normal thought processes. She prescribed Prozac.

Joseph I. Leizer, Ph.D., a state agency psychologist, reviewed Batton's medical records in May 2009. Dr. Leizer determined that Batton had depressive disorder and anxiety disorder, but that neither of these mental impairments was severe. He noted that Batton could perform routine activities such as laundry, cleaning, driving, shopping, caring for her child, and preparing meals. Dr. Leizer also indicated that, aside from seeing a counselor on two occasions, Batton had not had any other treatment with a mental health professional.

In August 2009, Julie Jennings, Ph.D., a state agency psychologist, also independently reviewed the medical records and determined that Batton had mental impairments of depressive disorder, anxiety disorder, and substance abuse by history. However, Dr. Jennings found that none of these impairments would cause any functional limitations.

In September 2009, Shipman reported that Batton was depressed, but oriented in time, place, and person. She indicated that Batton should increase socialization. (R. at 441.)

In November 2009, Shipman completed a mental status evaluation form. Shipman stated that Batton's symptoms were "increasing in frequency and intensity as reported by [the] client." (R. at 237.) She indicated that Batton was fully oriented and had no delusions or hallucinations, but that her mood was flat, sad, and tearful. Shipman noted that Batton was able to clean house and tend to her child.

In January 2010, John W. Ludgate, Ph.D., conducted a psychological evaluation at the request of Batton's attorney. Batton complained of anxiety, depression, crying spells, panic attacks, and a history of substance abuse. Dr. Ludgate diagnosed Batton with major depression, generalized anxiety disorder, and panic disorder with mixed social phobia and agoraphobia. He opined that Batton "would be unable to work" due to anxiety and depression. (R. at 384.)

In March 2010, Dr. Ludgate also completed an assessment of Batton's mental ability to do work-related activities. He opined that Batton had poor ability to deal with the public, use judgment with the public, deal with work stresses, or understand complex job instructions. Dr. Ludgate gave no explanation for his findings other than the "effects of anxiety and depression." (R. at 385.)

Shipman completed an assessment of Batton's mental ability to do work-related activities in September 2010. Shipman indicated that Batton would have significant occupational limitations. However, she provided no explanation for her findings. In October 2010, Dr. Bailey completed a similar assessment, indicating that Batton had poor ability to deal with work stresses and understand complex job instructions, but good ability to follow work rules and relate to coworkers.

At the administrative hearing held in November 2010, Batton testified on her own behalf. Batton confirmed that she was able to make simple meals, volunteer at her daughter's preschool, drive, play outside with her daughter, and go to the grocery store. Leah Salyers, a vocational expert, also testified. She classified Batton's past work as a nursing home cook as medium, skilled.

After reviewing all of Batton's records and taking into consideration the testimony at the hearing, the ALJ determined that she had severe impairments of low back pain attributable to lumbar strain and scoliosis, a history of cervical cancer, depression, anxiety, and a long history of polysubstance abuse currently in Suboxone treatment, but that none of these conditions, either alone or in combination, met or medically equaled a listed impairment.

Taking into account Batton's limitations, the ALJ determined that Batton retained the residual functional capacity to perform a range of medium work subject to some additional nonexertional limitations. The ALJ stated that Batton

was limited to simple, non-complex tasks. She was unable to perform production type work and should not work with the general public, but was able to work with a few other people in the work area. The vocational expert testified that someone with Batton's residual functional capacity could work as a cleaner/janitor, a material handler, or a laundry worker. The vocational expert testified that those positions existed in significant numbers in the national economy. Relying on this testimony, the ALJ concluded that Batton was able to perform work that existed in significant numbers in the national economy and was therefore not disabled under the Act.

Batton argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to give proper weight to Batton's mental restrictions set forth by Dr. Ludgate and Shipman, improperly gave some weight to her own observations of Batton, and was biased against Batton because of her age and history of drug abuse. For the reasons below, I disagree.

### III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do

h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In assessing DIB and SSI claims, the Commissioner applies a five-step sequential evaluation process.  The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2011).  If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases.  *Id*.; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983).  The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy.  *Id*. at 869.

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1956-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Batton argues that the ALJ's decision is not supported by substantial evidence. She presents three arguments.

First, Batton argues that the ALJ improperly substituted her own medical opinions for the opinions of Batton's physician and therapist. Specifically, Batton asserts that the ALJ failed to give proper weight to the mental restrictions set forth by Dr. Ludgate and Shipman.

In weighing medical opinions, the ALJ must consider factors such as the examining relationship, the treatment relationship, the supportability of the opinion, and the consistency of the opinion with the record. 20 C.F.R. §§ 404.1527(d), 416.927(d) (2011). Although treatment relationship is a significant factor, the ALJ is entitled to afford a treating source opinion "significantly less weight" where it is not supported by the record. *Craig*, 76 F.3d at 590.

In the present case, the ALJ considered the opinion of Dr. Ludgate, but gave little weight to his assessment, for several reasons. First, Dr. Ludgate's relationship with Batton was limited — his opinion was based on a one-time examination, made at the request of Batton's attorney. Second, Dr. Ludgate's statement that Batton "would be unable to work" is not a medical opinion and is due no special significance, because it is an opinion on an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) (2011). Furthermore, Dr. Ludgate's opinion is inconsistent with the objective medical findings of Batton's treating physician, Dr. Bailey, as well as Batton's extensive daily activities such as independently running her own household, caring for her toddler daughter, and volunteering at her daughter's preschool.

With respect to Shipman, the ALJ's assessment of her opinion is also supported by substantial evidence. As a licensed social worker, Shipman was not an acceptable medical source and therefore her findings do not carry the same weight as a "medical opinion." 20 C.F.R. §§ 404.1513(a), 416.913(a) (2011); *see Lilly v. Astrue*, No. 5:10-00750, 2011 WL 4597369, at *4 (S.D.W. Va. Sept. 30, 2011). Nevertheless, Shipman's check-list opinion indicating that Batton had severe mental limitations was not properly explained or supported by her own treatment notes. *See Miller v. Chater*, No. 95-2711, 1996 WL 389481, at *5 (4th Cir. July 12, 1996) (unpublished) ("[An] ALJ is entitled to give little weight to an

opinion which is not supported by objective findings.")  For example, Shipman frequently noted that Batton was alert and oriented, denied delusions or hallucinations, and had normal thought processes and fair judgment.  (R. at 238-41, 433, 435-38, 440).  She even recommended that Batton increase socialization.  (R. at 441.)  Moreover, Shipman's opinion is inconsistent with Dr. Bailey's documentation of Batton's alertness and orientation, as well as reports that Batton's anxiety and depression were improving with medication.  (R. at 310, 318, 324, 405, 407.)  Accordingly, I find that substantial evidence supports the ALJ's weighing of the psychological evidence.

Second, Batton contends that the ALJ improperly considered her own observations of Batton at the administrative hearing.  This argument has no merit.  When a claimant attends an administrative hearing, the ALJ may "consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements."  SSR 96-7P, 1996 WL 374186, at *5 (July 2, 1996); *see also Thompson v. Astrue*, 442 F. App'x 804, 809 (4th Cir. 2011) (unpublished).  In this case, the ALJ properly considered her own observations of Batton as one of various components of her credibility analysis.  She acknowledged that the hearing was "a one time event" and could not be considered conclusive evidence of Batton's overall level of daily functioning, assigning only

slight weight to her observations. (R. at 24.) I find that the ALJ did not overstep her authority under the law and regulations.

Lastly, Batton argues that the ALJ was improperly biased. Specifically, Batton claims that the first paragraph of the ALJ's findings was biased against her because it mentioned Batton's age and history of drug abuse. I find this argument unpersuasive.

In assessing a claim of bias, it is presumed that the hearing officer is unbiased. *See Schweiker v. McClure*, 456 U.S. 188, 195 (1982). This presumption is overcome if the plaintiff demonstrates that the ALJ "displayed deep-seated and unequivocal antagonism that would render fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 541 (1994).

In the present case, Batton's age and substance abuse history were relevant, thus the ALJ's consideration of these factors was not a reflection of bias. A claimant's age is a specified vocational factor in disability determinations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). Batton's age of thirty is significant because such a younger individual can more readily adjust to other work than those in older age classifications. *Id*. With respect to Batton's history of substance abuse, the record shows that Batton's departure from her last job was related to active drug abuse. Therefore, the ALJ was correct to consider whether Batton's substance

abuse background, rather than her alleged impairments, may have interfered with her ability to maintain employment.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED:   March 29, 2012

/s/  James P. Jones
United States District Judge